IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
                                                       : CASE NO.  1:10 CV 00120
MEDICAL ALLIANCE FOR CONTRACT                          :
MANUFACTURING,                                         : MEMORANDUM OPINION AND ORDER
                                                       :
                              Plaintiff,               :
                                                       :
            -vs-                                       :
                                                       :
                                                       :
RITE AID CORPORATION,                                  :
                                                       :
                              Defendant.               :
------------------------------------------------------ :
                                                       :
                                                       :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter is before the Court on the defendant Rite Aid Corporation's ("Rite Aid") motion to dismiss pursuant to Federal Rule 12(b)(6).  (Doc. 3).  The plaintiff, Medical Alliance for Contract Manufacturing, has responded, and Rite Aid has replied. (Doc. 6, 8).  For the following reasons, the Court will deny the defendant's motion.

**I. Background**

Plaintiff Medical Alliance for Contract Manufacturing is a Florida limited liability company, with its principal place of business in Ohio.  It is engaged in the business of selling health care and beauty products to retailers.  (Doc. 1, ¶1; Doc. 6, p. 2).  The defendant Rite Aid is a Delaware corporation, with its principal place of business in Pennsylvania.  (Doc. 1, ¶2).  The plaintiff alleges that Rite Aid owes it $164,952.71, pursuant to a sales agreement which the two had entered in 2008.  The plaintiff seeks

the full amount under several theories, including money-on-account, breach of contract, promissory estoppel, and unjust enrichment.[1]

Rite Aid motions for dismissal pursuant to Federal Rule 12(b)(6) on the grounds that the plaintiff agreed to the terms of a forum selection clause, which Rite Aid maintains would properly venue the litigation in the Court of Common Pleas in Cumberland County, Pennsylvania ("the Pennsylvania forum"). Alternatively, Rite Aid asks for dismissal under the doctrine of forum non conveniens.

Rite Aid maintains that, at the time its motion was filed, the plaintiff's principal, Thomas Klamet, and several business entities with which he was involved,[2] were defendants in another lawsuit filed 21 November 2008 in the Pennsylvania forum. In that suit, Rite Aid sought indemnification for losses it incurred related to the sale of those entities' products. Rite Aid contends that in light of this other lawsuit and the forum selection clause, the case would be better venued in the Pennsylvania forum.

As to the forum selection clause, Rite Aid includes with its motion two pertinent documents for the Court's consideration. The first is a Guaranteed Sales Agreement ("GSA") containing the forum selection clause, which states:

> The parties agree that Pennsylvania law governs the Agreement notwithstanding its conflicts of law provisions. Any lawsuit brought with regard to this Guaranteed Sales Agreement will be venued in the Court of Common Pleas, Cumberland County, Pennsylvania.

---

[1] Medical Alliance for Contract Manufacturing filed its complaint in Cuyahoga Court of Common Pleas on 26 October 2009, and Rite Aid removed the case to this Court on 19 January 2010, pursuant to the Court's diversity jurisdiction.

[2] It does not appear that the present plaintiff is a part of that suit.

(Doc. 3-4, p. 2). The GSA purports to bind an entity called Improvita CM-MACM, LLC to its terms. Although the GSA bears a signature, Rite Aid does not explain whose signature it is. The plaintiff's principal, Thomas Klamet, maintains that the signature is not his and that he has never executed a GSA on behalf of Medical Alliance for Contract Manufacturing. (Doc. 6-1, ¶8). Rite Aid does not dispute Mr. Klamet's contention.

Although it is not clear who signed the GSA or whether that person had the authority to bind the plaintiff to it, Rite Aid argues that the plaintiff agreed to its terms, because Medical Alliance for Contract Manufacturing, which it refers to as MACM, is actually a trade name for Improvita CM-MACM, LLC. Rite Aid contends that Medical Alliance for Contract Manufacturing, or MACM, is not an entity separate and distinct from Improvita and that, accordingly, it should be subject to the terms of the GSA. In support, Rite Aid directs the Court's attention to an Internal Revenue Service Form W-9 ("W-9 form), which indicates that Improvita does business as MACM LLC. (Doc. 3-3).

The plaintiff does not specifically address the import of the W-9 form, but it generally contends that it has no association with Improvita. Mr. Klamet states that while he was a founder of Improvita Health Products,[3] his ownership interest terminated in 2004. (Doc. 6-1, ¶17). He claims to have served in a consultative capacity up until 2008, at which time he severed ties with Improvita and began a new venture. (Doc. 6-1, ¶¶18-20). In support of this contention, the plaintiff points to its articles of organization, filed with the Florida Secretary of State on 1 July 2008, showing that Medical Alliance

---

[3]How or whether Improvita Health Products is related to Improvita CM-MACM, LLC is unexplained.

3

for Contract Manufacturing, LLC, was organized as a Florida limited liability company at that time. (Doc. 6-1, ¶6; Doc. 6-2).

The plaintiff further maintains that after its organization as an entity separate from Improvita, it struck up a new relationship with Rite Aid. It contends that at this point there was some confusion over how the company was to be identified, since Rite Aid would refer to the plaintiff as "Improvita CM-MACM LLC." (Doc. 6-1, ¶ 26). The plaintiff informed Rite Aid, however, that it was a separate and unrelated entity and was to be treated as such. (Doc. 6-1, ¶26). The plaintiff claims to have submitted a W-9 form so as to distinguish it from Improvita, pursuant to Rite Aid's directives. (Doc. 6-1, ¶27). The plaintiff has not provided a copy of the W-9, but presumably the W-9 submitted by Rite Aid is the same document to which the plaintiff refers. As noted above, the W-9 shows that Improvita does business as MACM, LLC. (Doc. 3-3). The plaintiff has also provided copies of emails that appear to reflect attempts by the plaintiff to clarify its status as a separate and independent entity. (Doc. 6-4).

In its reply, Rite Aid maintains that through these arguments the plaintiff is asking the Court to approve of a corporate shell game. Rite Aid again maintains that the plaintiff and Improvita share the same tax ID number and the same business mailing address. While it appears that MACM LLC shares a tax ID with Improvita, the W-9 does not reveal the ID number of the plaintiff. Further, it is not clear that plaintiff and Improvita share the same address. The articles of organization show a Florida address, while the W-9 shows an Ohio address. (Doc 6-2; Doc. 3-3).

Rite Aid's reply also directs the Court to a host of other documents, all of which were executed after Medical Alliance for Contract Manufacturing was organized in July

4

2008, but which identify Improvita as the entity contracting. (Doc. 8-1, ¶¶6, 7, 10). Rite Aid claims that in providing these documents to it, Mr. Klamet represented that Improvita was doing business as MACM, LLC, and, by extension, as Medical Alliance for Contract Manufacturing, and that on this basis, Rite Aid and the plaintiff established their business relationship. (Doc. 8-1, ¶¶10,11).

First, Rite Aid points to a New Vendor Form,[4] which appears to have been approved by Rite Aid in September 2008. This form sets forth "Improvita CM-MACM LLC" as the new vendor, and lists "10055 Sweet Valley Drive, Cleveland, Ohio 44125" as the corporate address. One of the form's sections states that "All mandatory documents listed in the section below must be attached to the application," and below this is a check box for "Rite Aid Guaranteed Sales Agreement." The box is unchecked.

Rite Aid's reply also directs the Court to several other documents, all of which were executed after the plaintiff entity was formed, including the Rite Aid Brand Manufacturer Agreement, the Rite Aid Returns Agreement, a Notice dated 22 August 2008, a Mutual Confidentiality Agreement, and Electronic Data Exchange Letter, and Defense Indemnity Agreement. (Doc 8-1, ¶7). Rite Aid maintains that Mr. Klamet signed all of these documents. It appears, however, that Improvita, and not Medical Alliance for Contract Manufacturing, is the party contracting. Rite Aid maintains that various other forum selection clauses contained in these documents either require that

---

[4]The New Vendor Form supplied by Rite Aid appears to be a different version than that provided by the plaintiff. Unlike Rite Aid's form, the plaintiff's form states that "MACM LLC" is the new vendor and lists "6161 Ruth Drive, Cleveland, Ohio 44131" as the corporate address. The plaintiff's form also shows a blank check box for "Rite Aid Guaranteed Sales Agreement."

this suit be brought in the Pennsylvania forum or provide further evidence that the plaintiff is so required under the GSA.

### II. The applicable standard

Although Rite Aid has styled its motion as one for a 12(b)(6) dismissal, the Court is inclined to treat it as a motion for summary judgment.  This should be no surprise to either party, since both have provided affidavits and various documents outside the pleadings for the Court's consideration.  Further, both parties have gestured at the possibility that the Court might convert the defendant's motion.  In the event of a conversion, notice to the opposing party by the Court is required where he "is likely to be surprised by the proceedings." See Salehpour v. Univ. of Tenn., 159 F.3d 199, 204 (6th Cir. 1998).  Generally, "[w]hether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." Id.  Given the facts and circumstances of this case, the Court finds that notice of conversion is not required.

Pursuant to Federal Civil Rule 56(c), therefore, summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably

6

find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### III. Discussion

While Rite Aid initially focused its attention on the enforceability of the forum selection clause, the dispute, as it has been joined by subsequent filings, goes to whether the clause should even apply in this instance.  As discussed above, Rite Aid maintains that it should, because the plaintiff and Improvita are essentially the same entity.  The plaintiff contends otherwise, because, as it claims, it is separate and distinct from Improvita.  For the following reasons, the Court is not prepared to rule that the forum selection clause should apply as a matter of law in this instance, and will deny the defendant's motion.

First, it is not clear what legal standard the parties would have the Court apply in its attempt to determine whether the plaintiff agreed to the forum selection clause.  In some respects, it appears the defendant is questioning whether the plaintiff is the real party in interest or whether it has standing, but it does not advance these as a legal theories.  Further, Rite Aid asks the Court to draw conclusions from the various documents, but offers no guidance as to whether contract, agency, or possibly some equitable doctrine should apply.

Rite Aid's argument essentially goes like this: because the plaintiff submitted to it a W-9 form showing that MACM LLC is an assumed business name for Improvita, the plaintiff, Medical Alliance for Contract Manufacturing, whose initials are MACM, must be bound to the agreements to which Improvita is bound.

7

The Court would perhaps accept this argument, if it were shown that the name of the entity bringing this suit, Medical Alliance for Contract Manufacturing, was in fact a trade name for Improvita.  While, clearly, the initials for Medical Alliance for Contract Manufacturing are MACM, and the parties refer to it in this way, it has not been demonstrated in a legally significant way that Medical Alliance for Contract Manufacturing is the same entity as MACM LLC.  In fact, the articles of organization provided by the plaintiff show that Medical Alliance for Contract Manufacturing is a separate and distinct business organization under the laws of Florida.

Further, seemingly material facts are in dispute or unclear.   Rite Aid maintains that the plaintiff agreed to the GSA, but the plaintiff claims that its principal, Mr. Klamet, never signed that document on behalf of the plaintiff.  Rite Aid does not attempt to rebut this assertion.  In addition, the New Vendor Forms appear to show that the GSA, the document containing the forum selection clause, was not part of the parties' agreement, insofar as the New Vendor Form represents one between the plaintiff and Rite Aid.  And, to confuse matters, each party has presented its own version of the New Vendor Form, without any explanation or argument as to which is correct.  The plaintiff's form shows "MACM LLC" as the new vendor, but Rite Aid's form shows "Improvita CM-MACM LLC."  The Court is not in the position to choose between the two on a motion for summary judgment, and without any explanation from the parties it can hardly make sense of the discrepancy.

Rite Aid's arguments as to the applicability of the forum selection clauses contained in the various reply documents are also unpersuasive.  Though all of these documents appear to bear Mr. Klamet's signature, none of them purport to bind the

8

plaintiff, Medical Alliance for Contract Manufacturing, to their terms. Further, even if the plaintiff were so bound, it is not readily apparent that these forum selection clauses could be enforced in this instance. For example, the confidentiality agreement between Improvita and Rite Aid would require that "any dispute related to this agreement" be brought in the Pennsylvania forum. Rite Aid has not demonstrated how the plaintiff's suit for money on account and breach of contract might be related to the confidentiality agreement. The same can be said for the defense and indemnity agreement and the manufacturer agreement.[5]

Rite Aid's alternative argument that the case should be dismissed under the doctrine of forum non conveniens is also rejected. When applying forum non conveniens, an appropriate alternative forum must first be established. Stewart v. Dow Chemical Corp., 865 F.2d 103, 106 (6th Cir. 1989). Next, the Court must consider the private interests of the litigants and factors of public interest in determining the relative convenience of the forum chosen by the plaintiff as opposed to the available alternative forum. Id. In evaluating these factors, no one factor is determinative. Id. at 105. The "central focus of the forum non conveniens inquiry is convenience...." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981).

As to the first requirement, there appears no question that the Pennsylvania forum would be an appropriate alternative forum, since Rite Aid is amenable to process there. See id. at 255 n. 22 ("[t]his requirement will be satisfied if the defendant is "amenable to process" in the foreign jurisdiction). However, in weighing the private

---

[5]Although Rite Aid points out that the forum selection clause in the manufacturer agreement is quite broad, it provides no substantive argument that it applies to the instant suit.

9

interests of the litigants and factors of public interest, the Court finds the balance weighs in favor of the plaintiff.

The Court first addresses the public factors. These include court congestion, local interest in the matter, interest in having the trial at home with the law that governs, avoidance of conflict-of-law problems or application of foreign law, and unfairness in burdening local citizens with jury duty. Wong v. PartyGaming Ltd., 589 F.3d 821, 832 (6th Cir. 2009).

Although the defendant argues that the parties' ongoing litigation in Pennsylvania creates a preference for that forum, in light of the need for judicial economy and efficiency, it is not apparent that the plaintiff is part of that suit, nor is it certain that the Pennsylvania suit is ongoing. Second, although the defendant is correct that a Pennsylvania court would be the preferred forum for handling a case under Pennsylvania law, it cannot be said with certainty whether the Pennsylvania choice of law clause contained in the GSA can be enforced against the plaintiff, since it has not been established that the parties agreed to it. Third, while Pennsylvania has an interest in a lawsuit filed against one of its citizens, Ohio has a similar interest in a suit brought by one of its own. Therefore, the public factors weigh in favor of the plaintiff.

The Court now addresses the private factors. These include ease of access to evidence, the ability to obtain witness attendance, and practical problems, such as ease, expeditiousness, and expense. Id. at 833.

At best, the private factors in the present case result in a split, because Rite Aid's witnesses and evidence are located in Pennsylvania and plaintiff's are located in Ohio. Rite Aid's contention that private interests should nonetheless tip in their favor on

10

account of the ongoing Pennsylvania litigation is rejected for the same reason discussed above.

**IV. Conclusion**

For the foregoing reasons, the defendant's motion is denied.

IT IS SO ORDERED.

                                                /s/ Lesley Wells
                                           UNITED STATES DISTRICT JUDGE

Dated:  9 February 2011